CHRISTOPHER M. RODGERS, on behalf of
himself and others similarly situated,

        Plaintiff,

vs.                               Case No. 8:05-CV-770-T-27MSS

CVS PHARMACY, INC.,

        Defendant.

_____/

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CONDITIONAL CERTIFY COLLECTIVE ACTION, TO FACILITATE NOTICE, AND TO COMPEL EXPEDITED DISCOVERY

Defendant CVS Pharmacy, Inc. ("CVS"), by and through its undersigned counsel, hereby submits its opposition to Plaintiff's Motion to Certify Collective Action, to Facilitate Notice, and to compel expedited discovery, as set forth in Plaintiff's Memorandum of Law.

## I.    INTRODUCTION

Plaintiff Christopher Rodgers ("Plaintiff"), a current night shift supervisor employed at CVS Store No. 1328 in Holiday, Florida, seeks conditional certification of an opt-in class pursuant to 29 U.S.C. § 216(b), based upon overtime claims alleged against CVS Pharmacy, Inc. ("CVS"). Plaintiff's own claim is very fact-specific: he believes that he has not been paid for all his working time because someone has been deleting hours from his payroll records, a practice he refers to as "shaving time." Plaintiff seeks to represent a nationwide class consisting of anyone who has worked in any CVS store across the country in "customer service, beauty advisor, photo lab, shift supervisor, and pharmacy technician positions" during the last three years. He argues that all non-exempt employees should be allowed to join his lawsuit, regardless

of their job title, store location, full-time or part-time status, or identity of supervisor, because other store employees (who remain nameless) have had working time shaved as well. Plaintiff's proposed class would include over 250,000 current and former CVS store employees.

Plaintiff's Motion should be denied for three reasons. First, Plaintiff has failed to establish that other non-exempt employees from thousands of CVS stores across the country actually desire to join this lawsuit. In addition to his testimony, Plaintiff offers testimony from only two declarants: a former employee from CVS Store No. 5470 in Florence, South Carolina, and a former employee from a closed CVS store location in Miami (Store No. 5132). Plaintiff cannot rely upon this evidence to prove that over a quarter of a million current and former CVS store employees desire to opt in to this case. The declarations themselves offer nothing but inadmissible hearsay, conclusory allegations and irrelevant or self-serving personal beliefs about the purported statements or claims of unidentified third persons. As a matter of law, this "testimony" is inadmissible, irrelevant and cannot satisfy Plaintiff's burden of proof.

Second, Plaintiff has not shown that he is similarly situated to the two former employees who offer testimony on his behalf, let alone a class of over 250,000 current and former CVS store employees. He fails to identify a common policy or plan that allegedly resulted in wage and hour violations affecting them – or any other group of CVS store employees. Moreover, the declarations he *has* submitted demonstrate that these claimants have significantly divergent theories as to how their respective rights to overtime pay were violated. Furthermore, Plaintiff's co-workers have submitted affidavits to this Court specifically *denying* Plaintiff's claim that "management" in Store No. 1328 is improperly "shaving" payroll.

Finally, conditional certification must be denied because the resulting class of over 250,000 non-exempt CVS store employees would be utterly unmanageable and jeopardize

CVS's fundamental right to due process. Plaintiff offers no reason to conclude that certifying such a large class is appropriate in this case. Specifically, there is no evidence that the proposed class would meet the required twin goals of judicial economy and efficiency. To the contrary, given the nature of Plaintiff's allegations, the Court would be forced to conduct hundreds of fact-intensive mini-trials concerning the unique allegations underpinning each named and opt-in plaintiff's claim of off-the-clock, "shaved," or otherwise unpaid work. Section 216(b)'s opt-in mechanism, as it has been interpreted in this Circuit, simply does not contemplate such a burdensome litigation process. Accordingly, Plaintiff's motion should be denied.

## II.  STATEMENT OF FACTS.

### A.  CVS's Retail Operations.

CVS is the nation's largest pharmacy retailer. As of July 1, 2005, CVS owned and operated over 5,400 CVS/pharmacy and PharmaCare Specialty Pharmacy stores in 36 different states.[1] See Affidavit of Mark Griffin, ¶ 6, attached as Exhibit 1. CVS/pharmacy retail stores are organized into 43 separate regions, managed by Region Managers who oversee numerous stores. Id. As of July 1, 2005, CVS retail stores employed about 107,000 employees in various non-exempt job classifications throughout the country. Id., ¶ 7. During the past three years, CVS stores employed over 250,000 individuals in hourly positions. Id.

### B.  CVS Payroll Policies and Practices.

CVS uses an electronic timekeeping system called the "SMART" system to record hours worked by non-exempt retail employees. Griffin Aff., ¶ 19. Store managers, assistant managers, and shift supervisors access the SMART system by using the store computer and an access code.

---

[1] In 2004, CVS completed its acquisition of over 1,100 Eckerd pharmacy stores. Griffin Aff., ¶ 8. Eckerd stores used a timekeeping system entitled "Kronos," which is significantly different than the "SMART" timekeeping system utilized by CVS stores, discussed below. Id.

Id. Typically, the store manager or his designee enters the weekly work schedule into the SMART System at the beginning of each week. Id., ¶ 21.

Employees "Time In" to the SMART System at a store cash register by punching in their identification number. Griffin Aff., ¶ 23. Employees receive a print-out "receipt" (a punch slip) that memorializes their "Time In" and "Time Out" time. Id., ¶ 24. If an employee punches in or out more than six minutes before or after a scheduled shift, the punch slip advises the employee that the Time In was not successful. Id., ¶ 25. If this happens, employees are instructed to submit their punch slip to management for reconciliation at the end of the workweek. Id.

The store manager or his designee is responsible for reconciling payroll by reference to the punch slips that require a manager override. Griffin Aff., ¶ 26. The manager or supervisor runs a "missing punch report" that identifies missing punches either at the end or beginning of an employee's scheduled workday. Id. The manager used the punch slips and records these entries in the SMART system for those occasions when the employee's Time In or Time Out occurred outside the weekly schedule . Id.

CVS has an established policy and practice of paying its employees all compensation to which they are entitled, in compliance with applicable state and federal laws. Griffin Aff., ¶ 15. CVS's Policy on Timekeeping and Payroll Practices ("the Timekeeping Policy") instructs all non-exempt and overtime-eligible employees that they must record the hours they work each day, using the timekeeping system employed in their store or worksite. Griffin Aff. at Ex. 2. Employees are also instructed to verify their hours worked when they receive their paycheck to ensure that their hours were recorded accurately and that they were appropriately paid for all hours worked. Id. If an employee believes an error has occurred, he or she is encouraged to

promptly report the matter to a manager, Human Resources, or the Contact Support Center at the telephone number listed in the Timekeeping Policy. Id.; see also Griffin Aff., ¶¶ 15-18.

CVS store employees are prohibited from working "off the clock," that is, without reporting the time worked. Griffin Aff., ¶ 17. Furthermore, it is a violation of the Timekeeping policy for anyone to instruct another employee to work off the clock, to incorrectly report hours worked, or to alter another employee's time records. Id. Employees are instructed to report Policy violations immediately to Human Resources or the CVS Ethics Hotline. Id.

## C.    Plaintiff's Employment at a CVS Store in Holiday, Florida.

Plaintiff has been employed as a night shift supervisor at CVS Store No. 1328 in Holiday, Florida. Griffin Aff., ¶ 9. As a shift supervisor on the night shift, Plaintiff is responsible for supervising other hourly employees in the retail (non-pharmacy) section of the store. Id., ¶ 10. Shift supervisors are also responsible for ordering merchandise, dealing with vendors, balancing cash drawers, setting up displays, and stocking merchandise. Depending upon the store location, some shift supervisors prepare weekly schedules. See Affidavit of Karyn Hobbick, ¶ 4, attached as Exhibit 2; see also Griffin Aff., ¶ 10.

On March 26, 2005, Plaintiff approached Karyn Hobbick, the shift supervisor responsible for reconciling payroll at Store 1328, and accused her of intentionally altering his time records to falsely report less working time than he actually worked.[2] Hobbick Aff., ¶ 15. Hobbick denied Plaintiff's accusations, but agreed to review his records to determine whether mistakes had been made. Id. Plaintiff accused no one else of manipulating his payroll. Id., ¶¶ 15, 18. Hobbick reported Plaintiff's complaint to the store manager, Chris Deacutis, and they reviewed Plaintiff's

---

[2] In support of his claim, Plaintiff submits punch receipts for March 10 and 12, 2005. Ptf. Ex. D. The March 10 receipt establishes that Plaintiff punched in at 19:54 hours and the Time Card Report reflects his "time in" as 20:00. Id. Plaintiff thus believes he was shorted 6 minutes of pay, although he does not say that he provided Hobbick with his punch in receipt so she could reconcile it with the schedule. Id. The March 12 receipt reflects a punch-in of 20:01, which is accurately reflected in the Time Card Report.

time records. Id., ¶ 17. Based upon available records, Hobbick determined that Plaintiff had been paid properly. Id. No other employee at Store 1328 has complained that his or her payroll records or working time has been manipulated by Hobbick, or anyone else at the store, and many of Plaintiff's co-workers have submitted affidavits denying that their work time has been "shaved" in order to deny them overtime compensation.[3]

### D.    Sherer's Employment at a CVS Store in Florence, South Carolina.

Plaintiff has submitted a declaration from a potential class member, Sherry Sherer, in support of his Motion.[4] Ptf. Ex. C. Sherer was employed as a Pharmacy Technician in a CVS store in Florence, South Carolina, until her resignation on March 1, 2003. See Griffin Aff. at Ex. 1. Soon after her resignation, Sherer communicated by email with CVS's Investor Relations Department regarding a variety of concerns relating to her employment, including reductions in her scheduled hours and miscommunications with her supervisors. Id. She also reported that the store manager, Kathy Langston, had "charged her" for sick time when she was actually working, and she complained that she had "documented proof that [her] time was taken from [her] on 1

---

[3] See Affidavits of Employees of Plaintiff's store, including affidavits of: Bade, Bandilla-Krebs, Buchs, Candelaria, Firns, Furlan, Miller, Rowan, Russo, Scheu, Selover, Trizlova, Wicker, and Zuniga, attached as Exs. 3(a) through 3(n), respectively.

[4] Following the filing of his Motion, Plaintiff submitted a second Declaration executed by Francisco Lopez, a former CVS employee in Miami Beach. See Docket No. 17. In contrast to Sherer and Plaintiff, Lopez alleges that he worked off-the-clock "and/or" his time was "shaved." Lopez Dec., ¶ 5. He also alleges that his first two weeks of employment were unpaid. Id., ¶ 11. Finally, he testifies in conclusory fashion that he "believes" other unidentified employees were treated similarly and "would choose to participate" in they received notice. Id., ¶¶ 11-12. These allegations have little in common with Plaintiff's claims, except that Lopez also alleges a violation of the law. Also, co-workers from his store have submitted Affidavits testifying that CVS manages payroll consistent with the terms of the Timekeeping Policy. See Affidavits of Employees of Lopez's store, including affidavits from: Alonso, Carrillo, Castro, Dominguez, Gurerro, Lewis, Toro, and Torres, Exhibits 5(a) through 5(h), respectively.

occasion."[5] Id.  Sherer's co-workers in the Florence store, however, have submitted affidavits

stating that CVS manages payroll consistent with the terms of the Timekeeping Policy.[6]

## III.  LEGAL ARGUMENT.

### A.  Under the Standard in the Eleventh Circuit, a District Court Should Not Conditionally Certify a Collective Action Unless the Named Plaintiff Proves that Others Wish to Opt In to His Case and that There is Commonality Between the Named Plaintiff's Claims and the Claims of the Proposed Class.

The FLSA does not expressly authorize the judicial intervention that Plaintiff seeks.  The

Act simply permits an individual to bring a representative action for unpaid overtime on behalf

of himself "and other employees similarly situated."  29 U.S.C. § 216(b).  In Hoffman-LaRoche,

Inc. v. Sperling, the Supreme Court decided that district courts "have discretion, in appropriate

cases, to implement" this collective action mechanism "by facilitating notice to potential

plaintiffs."  493 U.S. 165, 169 (1989) (emphasis added).  In support of this conclusion, the Court

relied upon Congressional policy (as expressed in the FLSA) that plaintiffs should have the

opportunity to proceed collectively, as well as the systemic benefits derived from a process that

permits the "efficient resolution in one proceeding of common issues of law and fact arising

from the same alleged . . . activity."  Id. at 170 (emphasis added).  See also id. at 172-74 (Rule 83

and the courts' authority to "regulate their practice" supports the Court's legal holding).

Caselaw in the Eleventh Circuit emphasizes that Section 216(b)'s "similarly situated"

standard is a flexible one that permits the district courts to consider the specific circumstances of

each case, the nature of the plaintiff's claims, as well as evidence of actual class-wide interest to

determine whether judicial notice would be "appropriate" in any particular case.  Hipp v. Liberty

---

[5] The "documented proof" submitted in support of Sherer's Declaration consists of two time card reports reflecting hours worked in January 2002 – well outside the limitations period applicable to any conceivable overtime claim asserted by Sherer.  See Ptf. Ex. C.

[6] See Affidavits of Employees of Sherer's store, including affidavits of: Bachman, Covington, Evans, Harrelson, Hill, Illingworth, Rand, Richardson, and Rush, attached as Exs. 4(a) through 4(i), respectively.

Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001). See also Haynes v. Singer Co., 696 F.2d 884, 886 (11th Cir. 1983) (plaintiffs bear the "burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they propose[]"). The Eleventh Circuit has suggested that the district courts use a "two-tiered approach" to the certification of a 216(b) opt-in class. Hipp, 252 F.3d at 1219. At this initial stage, Plaintiff must prove that there are, in fact, other potential plaintiffs who wish to participate in this litigation, and second, that he and his proposed class are similarly situated with respect to the alleged violation of law underlying his claim that his working time has been "shaved." See Dybach v. Florida Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991); Haynes, 696 F.2d at 886; Slaughter v. CVS RX Servs., Inc., Order dated Nov. 1, 2004, denying Plaintiff's Motion to Facilitate Notice, Case CV 03-CO-01403-S (N.D. Ala.) ("the Eleventh Circuit has held that plaintiffs must provide evidence that satisfies the district court that other similarly situated employees *actually desire* to opt-in to the litigation" [italics in original]); Baum v. Shoney's, Inc., Order dated Dec. 3, 1999, denying Plaintiff's Motion for Expedited Court Supervised Notice, Case 98-423-CV-ORL-196 (M.D. Fla.) ("Plaintiffs may meet [their] burden by making substantial detailed allegations of class-wide violations of the FLSA supported by affidavits.").

The nature of proof necessary to establish a similarly-situated class varies depending upon the nature of the underlying claim. In certain FLSA cases, such as where a plaintiff challenges his exempt classification, similar job requirements and pay provisions may meet the standard.[7] Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 947 (M.D. Fla. 1994) (clerical employees established that their duties were similar, but that their employer only paid them

---

[7] In cases alleging class-wide age discrimination, the Eleventh Circuit has found that the "similarly situated" standard is met when plaintiffs "demonstrat[e] a reasonable basis for their claim of classwide discrimination." Hipp, 252 F.3d at 1219 (quoting Grayson v. K-Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996)).

based upon a forty-hour work week); Dybach, 942 F.2d at 1567-68 (where plaintiff alleged that she was improperly classified as an exempt "professional," court should determine whether there are other employees who are "similarly situated" with respect to job requirements and pay provisions). Simply alleging that all employees have similar jobs will not establish a similarly-situated class in every case, however; "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions[.]" Horne v. United Servs. Auto. Ass'n, 279 F. Supp.2d 1231, 1234 (M.D. Ala. 2003) (emphasis added). See also Marsh v. Butler County Sch. Sys., 242 F. Supp.2d 1086, 1092-94 (M.D. Ala. 2003) (discussing the Eleventh Circuit requirement that a plaintiff demonstrate commonality between his claim and the claims of his proposed class). "[W]ithout such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." Horne, 279 F. Supp.2d at 1234.

**B.  Plaintiff Has Produced No Admissible Evidence of Nationwide Interest in His Theory of Overtime Liability.**

**1.  Plaintiff's "Evidence" of Nationwide Interest in a Lawsuit Alleging "Shaving Time" is Not Admissible – and Certainly Not Probative.**

In the Eleventh Circuit, a plaintiff has the burden of proving that others "actually desire" to opt in to the lawsuit *before* notice is authorized. Slaughter, Order dated November 1, 2004, p. 10; Dybach, 942 F.2d at 1567-68; see also Mackenzie v. Kindred Hosp. East, LLC, 276 F. Supp.2d 1211, 1220 (M.D. Fla. 2003) (rejecting argument that notice must be provided in order to determine whether there are others who may desire to join the case). Plaintiff cannot rest his case on the argument of counsel, see Haynes, 696 F.2d at 887,[8] nor can he simply testify to his

---

[8] See also Campania Mgmt., Inc. v. Rooks, Pitts & Poust, 290 F.3d 843, 853 (7th Cir. 2002) ("statements of attorneys are not evidence").

"belief" that other employees may be interested in joining his lawsuit. See Horne, 279 F. Supp.2d at 1236 (plaintiff's personal belief did not satisfy Eleventh Circuit standard).

Relying upon this precedent, the Alabama federal court in Slaughter v. CVS RX Servs., Inc., recently denied a motion to facilitate notice in an FLSA case because the plaintiffs "failed to show that other similarly-situated employees in the broad class that [the plaintiffs] propose[d] desire to opt-in to th[e] lawsuit." Slaughter, Order dated November 1, 2004, p. 9. Thirteen plaintiffs in Slaughter, all residents of Alabama or Georgia, sought to represent a nationwide class of full-time pharmacists, alleging that their pay was docked if they worked less than forty hours per week, and that they were not paid time and a half for working more than forty hours. Id., p. 4. The plaintiffs submitted two affidavits in support of their claim of "national interest": one individual who testified that she "believed" that another full-time pharmacist would join the lawsuit if notified of its existence, and one CVS pharmacist, also employed in Georgia, who desired to join. Even under the "fairly lenient standard" urged by the plaintiffs, the Slaughter court denied the motion because they simply had not shown a "reasonable basis" for crediting the plaintiffs' argument that a nationwide class existed. Id., p. 13.

Plaintiff here offers significantly *less* proof of "nationwide interest" than was provided to the Slaughter court, despite his aggressive efforts to advertise the existence of this litigation on the Internet and in the press.[9] See Sherer Dec., ¶ 13. In the absence of actual evidence, Plaintiff relies upon anonymous reports in newspaper articles (Ptf. Exs. A, F), an unauthenticated and irrelevant government audit report (Ptf. Ex. E), and conclusory and inadmissible allegations

---

[9] See posting from yahoo.com message board, attached as Exhibit 6. Plaintiff's counsel also spoke to the Tampa newspapers regarding this lawsuit, publishing his belief that the case could involve "thousands" of CVS employees. See 4/23/05 St. Petersburg Times article, attached as Exhibit 7.

regarding unidentified co-workers contained in his own, Sherer's, and Lopez's Declarations.[10]
See Plaintiff's Dec., ¶¶ 9, 21, 22; Sherer Dec., ¶¶ 14, 16, 17; Lopez Dec., ¶¶ 8, 10-12. None of
these Declarations identifies a *single* employee who is "similarly situated" and who actually
desires to join this case.[11] Id. Plaintiff's personal opinion, coupled with flat hearsay, has no
probative value in federal court. Stewart v. Booker T. Washington Ins., 232 F.3d 844, 851 (11th
Cir. 2000). Plaintiff cannot rely upon inadmissible evidence to meet his burden of proof. Hipp,
252 F.3d at 1219 (allegations must be supported by detailed affidavit evidence). Neither
Sherer's nor Lopez's Declaration demonstrates that there are thousands of "aggrieved
individuals" employed in CVS stores nationwide who desire to join this case. See Slaughter,
Order dated November 1, 2004, pp. 11 n.6, 11-12 (rejecting argument that the existence of one
potential opt-in plaintiff justifies judicial notice to employees in 4,100 CVS stores in 34 states).
The complete absence of proof that thousands of CVS store employees across the country
actually intend to join this litigation mandates the denial of this motion without further analysis.

### 2. The Most Relevant Group of Alleged "Similarly Situated" CVS Store Employees Flatly Rejects Plaintiff's Claims.

The most probative evidence of potential plaintiffs would be testimony from Plaintiff's
co-workers in the Holiday store who may feel similarly "aggrieved" by Karyn Hobbick's alleged
manipulation of the payroll system. See Reyes v. Carnival Corp., 2005 U.S. Dist. LEXIS 11948,
*9 (S.D. Fla. May 25, 2005) (conditional class certified, but limited to plaintiff's work group in
Miami, based upon supporting affidavits filed by co-workers); Harper v. Lovett's Buffet, Inc.,
185 F.R.D. 358, 362 (M.D. Ala. 1999) (conditional class certified, but limited to plaintiff's work

---

[10] Plaintiff also points to the Order in Hill v. CVS RX Services, Inc., Case No. CV00-HGD-3355-5 (S.D. Ala.) as evidence of opt-in interest. Ptf. Mem., p. 9. The Hill case did not involve "shaving time" or any similar allegation and is utterly irrelevant, from an evidentiary perspective, to Plaintiff's Motion.

[11] CVS has filed its Motion to Strike this "evidence" from the record and refers the Court to that Motion as further support for its opposition.

site, based upon 15 affidavits filed by co-workers). Plaintiff offers no such evidence. Instead, he testifies vaguely of an "awareness" that "other[s]" who "had changes made to their time sheets" by "CVS management" (Plaintiff's Dec., ¶ 9). In a telling omission, he does not identify these employees – nor have they come forward to offer evidence in support of his motion.

Plaintiff's co-workers *have* voluntarily submitted affidavits, but they flatly deny Plaintiff's claim -- made "on their behalf" -- that "CVS management" is manipulating payroll and failing to pay them for hours worked.[12] See Exs. 3a-n (Bade Aff., Bandilla-Krebs Aff., Buchs Aff., Candelaria Aff., Firns Aff., Furlan Aff., Miller Aff., Rowan Aff., Russo Aff., Scheu Aff., Selover Aff., Trizlova Aff., Wicker Aff., Zuniga Aff). Plaintiff's co-workers affirm their understanding of the CVS Timekeeping Policy, see, e.g., Trizlova Aff., ¶ 7,[13] they understand that manipulation of the payroll system is strictly prohibited, id., ¶ 9,[14] they review their paystubs to ensure they are properly paid, id., ¶ 11,[15] they contact the store manager if they perceive a

---

[12] These affidavits are not submitted to dispute the merits of Plaintiff's personal allegations – but they are certainly relevant and probative for the Court's consideration as to whether Plaintiff has established a "reasonable basis" for class-wide violations. Haynes, 696 F.2d at 886. For example, the *only* allegedly aggrieved person identified by name in *any* of the declarations submitted by Plaintiff is a shift supervisor named "Charles." See Sherer Aff., ¶ 16. Shift supervisor Charles Rush, however, denies Sherer's claim and believes he has been correctly paid for all of the time that he has worked. See Rush Aff., ¶¶ 11, 29.

[13] See also Bade Aff.,¶ 6; Bandilla-Krebs Aff., ¶ 7; Buchs Aff., ¶ 6; Candelaria Aff., ¶ 6; Firns Aff., ¶ 6; Furlan Aff., ¶ 7; Miller Aff., ¶ 6; Rowan Aff., ¶ 7; Russo Aff., ¶ 7; Scheu Aff., ¶ 7; Selover Aff., ¶ 7; Wicker Aff., ¶ 6; Zuniga Aff., ¶ 7.

[14] See also Bade Aff.,¶ 8; Bandilla-Krebs Aff., ¶ 9; Buchs Aff., ¶ 8; Candelaria Aff., ¶ 8; Firns Aff., ¶ 8; Furlan Aff., ¶ 9; Miller Aff., ¶ 8; Rowan Aff., ¶ 9; Russo Aff., ¶ 9; Scheu Aff., ¶ 9; Selover Aff., ¶ 9; Wicker Aff., ¶ 8; Zuniga Aff., ¶ 9.

[15] See also Bade Aff.,¶ 11; Bandilla-Krebs Aff., ¶ 12; Buchs Aff., ¶ 10; Candelaria Aff., ¶ 10; Firns Aff., ¶ 11; Miller Aff., ¶ 11; Rowan Aff., ¶ 11; Russo Aff., ¶ 11; Scheu Aff., ¶ 11; Selover Aff., ¶ 11; Wicker Aff., ¶ 11; Zuniga Aff., ¶ 11.

problem, and those problems are corrected. Id.[16] Finally, they deny that anyone has "shaved" their working time. Id., ¶ 20.[17]

This testimony underscores the baseless and speculative nature of Plaintiff's "belief" that *anyone* currently or formerly employed at a CVS store is similarly situated and "actually desires" to join this case. See Horne, 279 F. Supp.2d at 1236 (noting plaintiff's failure to present affidavit testimony from co-workers reporting to the same manager, who also alleged that they were not paid overtime, despite production goals that required overtime work). The fact that Plaintiff's co-workers have voluntarily provided testimony and rejected his theory of liability is conclusive proof that this case is entirely *in*appropriate for judicial notice. See Mackenzie, 276 F. Supp.2d at 1220 (evidence that plaintiff's co-workers were not interested in participating in lawsuit supports refusal to facilitate judicial notice).

**C.** **Plaintiff Fails to Show that He Is Similarly Situated to the Extraordinarily Broad Class of CVS Store Employees He Proposes to Represent.**

**1.** **Plaintiff Offers No Evidence of a "Common Policy or Plan" That Results in a Corporate Practice in Violation of the FLSA.**

The legal foundation for approving notice to potential 216(b) claimants is the benefit to the judicial system obtained through the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Sperling, 493 U.S. at 170, 172 (notice avoids "duplicative suits"). Courts require, therefore, that a plaintiff

---

[16] See also Miller Aff., ¶ 11; Russo Aff., ¶ 11; Scheu Aff., ¶ 11; Zuniga Aff., ¶ 11.

[17] See also Bade Aff., ¶ 19; Bandilla-Krebs Aff., ¶ 20; Buchs Aff., ¶ 19; Candelaria Aff., ¶ 17; Firns Aff., ¶ 19; Furlan Aff., ¶ 20; Miller Aff., ¶ 20; Rowan Aff., ¶ 20; Russo Aff., ¶ 20; Scheu Aff., ¶ 20; Selover Aff., ¶ 20; Wicker Aff., ¶ 18; Zuniga Aff., ¶ 20. Sherer's co-workers have likewise filed affidavits, confirming the CVS Timekeeping Policy and denying that any member of management has ever "shaved" their working time in order to avoid payment of overtime compensation. See Covington Aff., ¶ 19; Evans Aff., ¶ 19; Harrelson Aff., ¶ 19; Hill Aff., ¶ 19; Illingworth Aff., ¶ 18; Rand Aff., ¶ 18; Richardson Aff., ¶ 19; Rush Aff., ¶ 19. Lopez's co-workers have done the same. See Alonso Aff., ¶ 18; Carrillo Aff., ¶ 19; Castro Aff., ¶ 20; Dominguez Aff., ¶ 19; Gurerro Aff., ¶ 20; Lewis Aff., ¶ 20; Toro Aff., ¶ 18; Torres Aff., ¶ 20.

demonstrate there is a reasonable basis to conclude that he and other members of the proposed class have been treated in a similarly illegal manner. Hipp, 252 F.3d at 1218 (plaintiffs' proof must support the existence of "class-wide discrimination"). A plaintiff can meet this burden of proof by demonstrating a common policy, plan or scheme that creates a pattern of alleged violations, see Barron v. Henry County Sch. Sys., 242 F. Supp.2d 1096, 1103 (M.D. Ala. 2003), or in the absence of a policy or plan, he must show some degree of commonality between his own claims and the claims of his proposed class, "beyond the mere facts of job duties and pay provisions[.]" Horne, 279 F. Supp.2d at 1234. See also Marsh, 242 F. Supp.2d at 1093; Harrison v. Enterprise Rent-A-Car, Co., 1998 U.S. Dist. LEXIS 13131, *4 (M.D. Fla. Jul. 1, 1998) ("plaintiffs must come forward with 'some identifiable factual nexus which binds the named plaintiffs and potential class members together'" [internal citation omitted]).[18]

Plaintiff has not even *attempted* to demonstrate the possibility that CVS has a "nationwide" policy or plan of "shaving" reported hours to avoid overtime payments. Plaintiff complains that Hobbick, *another shift supervisor*, falsely reported his work hours.[19] Hobbick Aff., ¶ 15. Sherer asserts a variety of complaints, including misuse of her "sick time" benefits, deductions for lunch breaks not taken, and reduction in her scheduled hours. Sherer Dec., ¶ 11, 13, 16, 17. Lopez complains that he worked off-the-clock, and that he was not paid for his first two weeks of employment. see Lopez Dec., ¶ 5, 11. None of these allegations could be described as a "common policy or plan" that results in overtime violations.

---

[18] Other Circuits follow the same approach, holding that a plaintiff's burden "entails more than just a matching of job responsibilities." See Hunter v. Sprint Corp., 346 F. Supp.2d 113, 119 (D.D.C. 2004) (noting that "substantial identity both of factual circumstances and legal claims is required before a collective action may proceed[,]" and analyzing whether proposed opt-ins (1) worked in the same corporate department, division, and location; (2) advanced similar claims; and (3) seek the same relief.).

[19] Plaintiff has not identified Hobbick in his Affidavit; instead, he testifies passively that "changes were made to the time records to remove time that [he] had worked." Plaintiff's Dec., ¶ 4. He was, however, explicit to Hobbick that he blamed her for the discrepancies in his paycheck. Hobbick Aff., ¶ 15.

In Harper, the plaintiffs submitted evidence that their manager was requiring off-the-clock work to reduce the number of paid hours, not paying for meeting times, and deducting 30-minute breaks even if the employees were too busy to take a break. 185 F.R.D. at 360. The plaintiffs argued that defendant's corporate pay plan encouraged these practices by requiring managers to minimize labor costs, and they provided testimony from fifteen affiants, all employed in one restaurant, testifying in support of their motion.[20] Id. at 361. The court, however, was unpersuaded, finding no evidence "to support their allegation that Defendant's corporate-wide incentive pay plan for its managerial employees resulted in violations" of the FLSA. Id. at 363. While the plaintiffs presented evidence of potential violations at their own restaurant, "there is a total dearth of factual support for Plaintiffs' allegations of widespread wrongdoing at Defendant's other restaurants." Id., citing Haynes, 696 F.2d 884. The class that the plaintiffs sought to represent "worked at different restaurants, in different states, for different managers, and, most likely, in quite different working conditions." Id. Accordingly, the plaintiffs failed to show that they were similarly situated to the nationwide workforce. See also Tucker, 872 F. Supp. at 948 (plaintiffs failed to show that employees working at truck terminals other than the terminal where the named plaintiffs worked were similarly situated).

Plaintiff's, Sherer's, and Lopez's co-workers have testified to the undisputed fact that CVS policy strictly prohibits off-the-clock work and the alteration of payroll records in order to underreport hours worked.[21] With the exception of Sherer, Lopez and Plaintiff, no employee at these three store locations has ever complained about "shaved time," or other abuse of the payroll system. The only "common policy" established by the record is that CVS requires store

---

[20] Plaintiff here has not even come forward with this kind of evidence – i.e., a centralized policy that pressures or incentivizes managers to minimize overtime expense.

[21] See Buchs Aff., ¶ 8; Furlan Aff., ¶ 9; Rowan Aff., ¶ 9; Russo Aff., ¶ 9; Scheu Aff., ¶ 9; Selover Aff., ¶ 9; Trizlova Aff., ¶ 9; Zuniga Aff., ¶ 9.

employees to properly record their time and prohibits alteration of those time records. This clearly legal policy is well publicized and employees are familiar with its requirements.[22]

### 2. The Declarations Submitted by Plaintiff Establish Wildly Divergent and Unique Factual Circumstances, and Therefore, No Commonality.

Plaintiff also fails to demonstrate a common legal or factual nexus between the basis for his claim and the claims of his proposed nationwide class. Thus, this proposed collective action could not conceivably further the interests of judicial economy and efficiency. Hobbick only reconciles payroll at Store 1328.[23] Testimony regarding the manner in which she performs this delegated administrative function has no relevance to Sherer's complaint that her store manager in South Carolina, Kathy Langston, went "in the computer system after she determined her budgeted hours for the week and changed [Sherer's] actual hours worked to sick time[.]"[24] Sherer Dec., ¶ 11. According to Lopez, he and other employees were required to work "off the clock" when they unloaded trucks (Lopez Dec., ¶ 5), and "[a]ll employees [he] knows" were not paid for their first two weeks of work. Id., ¶ 11. These allegations have no evidentiary commonality whatsoever. The fact that three employees complain that they were not paid overtime does not meet Plaintiff's burden of proof. Marsh, 242 F. Supp.2d at 1094 ("the mere fact that violations [of the FLSA] occurred cannot be enough to establish similarity"). Furthermore, these allegations have no relevance to any other purported plaintiff who may, in

---

[22] See Affidavits of Co-Workers (Exhibits 3, 4, and 5).

[23] Plaintiff conveniently ignores the fact that while he has accused Hobbick of fraud, he also seeks to represent her interests as a member of his purported collective class – a conflict which demonstrates how little coherence lies behind Plaintiff's proposed class litigation.

[24] Evidence that Hobbick had manipulated Plaintiff's payroll could not be used to establish liability for unpaid overtime at any other store location – or with respect to any other CVS employee. See England v. New Century Fin. Corp., 370 F. Supp.2d 504 (M.D. La. 2005) (denying conditional certification in a case where plaintiffs filed 198 supporting declarations from 70 different office locations; "individual inquiries must predominate in this case because of the different locations, managers, and factual situations involved at each location.").

some other part of the country, feel that he or she is not being compensated properly – for whatever reason. See Brooks v. BellSouth Telecomms. Inc., 164 F.R.D. 561, 567-69 (N.D. Ala. 1995) (the need for individualized inquiries is a sufficient reason to deny notice).

Plaintiff cannot prove that the unique allegations in the three submitted declarations raise "common issues of fact" that tie his overtime claim to any other current or former CVS employee – so he does not try to do so. Instead, Plaintiff argues in conclusory fashion that "hourly non-management employees in CVS are similarly situated with respect to their job requirements and pay provisions."[25] Ptf. Mem., p. 9. Rather than evidence, he relies upon "[c]ommon sense and life experience" to support his Motion. Id., p. 10. The only "common sense" conclusion that can be reached here is that Plaintiff could not meet his burden of proof – so he chose to ignore it.[26] Plaintiff's personal grievance, involving another shift supervisor, has no connection whatsoever with his job duties or with Sherer's various conflicts three years ago with her former manager, or Lopez's complaints regarding his alleged off the clock work. None

---

[25] The only evidence submitted to the Court in support of Plaintiff's proposition that all "full-time and part-time hourly non-management employees" have the same job requirements is a print-out of a computer screen that permits on-line application for hourly positions. See Ptf. Ex. B. Plaintiff, Sherer, and Lopez do *not* testify regarding job duties in their declarations. Plaintiff's co-workers have testified that their jobs, were in fact, quite distinct, depending upon the area of the store where they worked, and whether they were responsible for employee supervision. See Rowan Aff., ¶ 4; Russo Aff., ¶ 4; Scheu Aff., ¶ 4, et al. Sherer herself said "someone who doesn't work in the pharmacy has no idea what is going on back there." Griffin Aff. at Ex. 1. Plaintiff himself was responsible, in part, for managing other hourly employees on his shift. See Ptf. Ex. B (identifying "employee supervision" as a shift supervisor duty). As the "management employee" who Plaintiff has accused of manipulating time records, Hobbick (and other shift supervisors, such as Plaintiff) has an obvious conflict of interest with other putative class members. See, e.g., White v. Osmose, Inc., 204 F. Supp.2d 1309, 1314 (N.D. Ala. 2002) (declining to certify a class of non-exempt foreman and crewmen due to foremen's responsibilities relating to payroll).

[26] Plaintiff's offer of proof pales when contrasted with the record (in cases cited by Plaintiff) on which courts in this Circuit have exercised their discretion and approved judicial notice. See, e.g., Pendlebury v. Starbucks Coffee Company, 2005 U.S. Dist. LEXIS 574, **2-4 (S.D. Fla. Jan. 3, 2005) (certifying class based upon testimony of four store managers regarding their job duties, establishing a corporate policy of classifying store managers as exempt, and evidence that ten other store managers were willing to opt-in to the lawsuit); Spell v. Voyeur Dorm, LC, Order dated August 4, 2003, Case No.: 8:03-cv-10910T-26TGW (M.D. Fla.) (certifying class based upon detailed affidavits establishing uniform policy of requiring hours worked in excess of 40 without overtime, noting that six additional co-workers had filed consent forms).

of these Declarants has offered any evidence that would justify notifying 250,000 current and former employees across the country about this case and offering them the opportunity to join.

### D.      Plaintiff's Proposed Notice is Overbroad and Misleading.

For the reasons stated above, conditional class certification is inappropriate in this case and the Court should deny Plaintiff's motion. If the Court conditionally certifies a class, precedent in this Circuit supports a limitation on the scope of the certified class to the Holiday store.[27] See Bell v. Mynt Entm't, LLC, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (notice limited to plaintiffs' work location); see also Reyes, 2005 U.S. Dist. LEXIS 11948, *9; Harper, 185 F.R.D. at 362; Tucker, 872 F. Supp. at 948. Also, since Plaintiff has only raised concerns about the manner in which Hobbick reconciles his payroll (a claim that no other employee has made), only those hourly *full-time* employees[28] who have been employed at the store during Hobbick's tenure reasonably fall within the scope of the class, following CVS's acquisition of the Eckerd stores.[29]

### E.      Plaintiff is Not Entitled to Expedited Discovery of Personnel Data Absent Certification of His Proposed Collective Class.

Plaintiff's request for "expedited discovery" of personnel data of individuals employed in any "hourly non-management position[] from June 1, 2002, to the present" should be denied for three reasons: (1) he has no need for the information; (2) the production of such information violates the privacy rights of such individuals; and (3) the scope of the request is exceedingly broad and unduly burdensome.

---

[27] As discussed above, Sherer's and Lopez's various concerns have nothing in common with Plaintiff's claims – except to the extent that they also allege a violation of the FLSA. Furthermore, the only evidence offered by Sherer in support of her claims establishes that they are time-barred.

[28] Plaintiff requests that full-time *and* part-time CVS hourly employees receive notice, but he has not presented evidence that part-time employees at CVS could claim a right to overtime – or that part-time employees are required to work more than 40 hours in a workweek, despite their "part-time" status.

[29] The pleading-style caption should also be removed, to avoid the appearance of judicial endorsement. Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042 (N.D. Ill. 2003).

The Court has broad discretionary powers under Federal Rule 26(c) "to fashion discovery in a manner that is suitable to the action before it." Id. Plaintiff has failed to establish the existence of a plausible "similarly situated" class of CVS store employees with respect to his claim, and the information he seeks is irrelevant to his individual claim. See Brooks, 164 F.R.D. at 571 (declining to compel production of personnel data where plaintiff failed to establish that "similarly situated" plaintiffs existed); Mackenzie, 276 F. Supp.2d at 1221 (same). Other than Plaintiff's bare allegation that all hourly employees are "similarly situated," Plaintiff has failed to establish the relevance of discovery beyond the Holiday store.

These putative class members also have a right – guaranteed by the First, Third, Fourth, Fifth and Ninth Amendments to the United States Constitution as well as the constitutions of various states in which they may reside – to be free from having their personal information disclosed in litigation absent their express consent. See, e.g., Pioneer Electronics (USA), Inc. v. Superior Court, 2005 WL 768597, at *5 (Cal. Dist. Ct. App. Mar. 30, 2005) (refusing to order disclosure of identifying or contact information of putative class members without their consent, citing privacy guarantees of California Constitution and United States Constitution). If the Court determines that any identifying information regarding CVS store employees is warranted, the Court must balance the need to promote effective case management, prevent potential abuse, and protect the rights of all parties in deciding the scope of information to be disclosed. See Tracy v. Dean Witter Reynolds, Inc., 185 F.R.D. 303, 305 (D. Colo. 1998). "[E]ven where the balance weighs in favor of disclosure of private information, the scope of disclosure will be narrowly circumscribed; such an invasion of the right to privacy must be drawn with narrow specificity and is permitted only to the extent necessary for a fair resolution of the lawsuit." Cook v. Yellow Freight System, Inc., 132 F.R.D. 548, 552 (E.D. Cal. 1990) (citations omitted).

The Court should reject Plaintiff's effort to obtain the telephone numbers, dates and locations of employment, and social security numbers of current and former hourly store employees. See, e.g., Cook, 132 F.R.D. at 552 (limiting disclosure of identifying information to name and address for purposes of notice). This is particularly true because Plaintiffs' co-workers have testified they believe they have been properly compensated for all working time. To the extent *any* information regarding CVS's workforce is relevant to the issues raised by the pleadings, discovery should be limited to the names and addresses of store employees who could have personal knowledge of facts relevant to Plaintiff's own overtime claim.

## IV.    CONCLUSION.

The policy concerning facilitating Section 216(b) collective actions must be balanced against the long-standing and well-founded judicial concern about the unwarranted "stirring up" of litigation. See Horne, 279 F. Supp.2d at 1237; Sperling, 493 U.S. at 495 (Scalia, J., dissenting) ("'Stirring up litigation' was once exclusively the occupation of disreputable lawyers, roundly condemned by this and all American courts"). Plaintiff's effort to justify nationwide notice to 250,000 current and former CVS employees falls far short of even the "low threshold" of proof required by the courts in this Circuit. His motion should be denied in its entirety.

DATED this 15th day of July 2005.

Respectfully submitted,

By: _____

Aaron Reed
Florida Bar No. 0557153
LITTLER MENDELSON, P.C.
One Biscayne Tower, Suite 1500
Two South Biscayne Blvd.
Miami, Florida 33131
Tel: (305) 400-7500
Fax: (305) 603-2552

Lisa A. Schreter, Esq.
Georgia Bar No. 629852
Littler Mendelson, P.C.
3348 Peachtree Road, N.E.
Suite 1100
Atlanta, Georgia 30326-1008
Tel: (404) 233-0330
Fax: (404) 233-2361

Andrew J. Voss, Esq.
Minnesota Bar No. 241556
Littler Mendelson, P.C.
33 South 6th Street
Suite 3110
Minneapolis, Minnesota 55402
Tel: (612) 630-1000
Fax: (612) 630-9626

Counsel for DEFENDANT CVS PHARMACY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the CM/ECF participants identified below. I further certify that on this same day, I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants identified at the time of electronic filing, including: Gregory K. Showers, Esq. and Ryan D. Barack, Esq., KWALL SHOWERS COLEMAN & BARACK, P.A., 133 North Fort Harrison Avenue, Clearwater, Florida 33755.

Aaron Reed

Firmwide:80139325.3 049876.1002