UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHRISTOPHER M. RODGERS, on behalf
of himself and others similarly situated,**

**Plaintiff,**

**vs.**                                                          **Case No. 8:05-CV-770-T-27MSS**

**CVS PHARMACY, INC.,**

**Defendant.**

_____/

## ORDER

**BEFORE THE COURT** are Plaintiff's Motion to Conditionally Certify Collective Action, to Facilitate Notice (Dkt. 11) and Defendant's Opposition (Dkt. 23).[1] Upon consideration, the Court having conducted a hearing, and being otherwise fully advised in the premises, Plaintiff's Motion to Conditionally Certify Collective Action, to Facilitate Notice (Dkt. 11) is DENIED.

### Factual Background

On April 20, 2005, Plaintiff, Christopher M. Rodgers, filed this action against Defendant, CVS Pharmacy, Inc., alleging failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (Dkt. 1, Compl.). Plaintiff's suit is brought individually and on behalf of others similarly situated who are and were employed by Defendant during the three years preceding this lawsuit. (Dkt. 1). To date, two individuals have filed notices of consent to join the collective action: Sherry Sherer (Dkt. 4) and Francisco Lopez (Dkt. 17).

_____

[1] Also before the Court are Plaintiff's Notice of Supplemental Authority (Dkt. 37) and Defendant's Response (Dkt. 40).

Plaintiff alleges that Defendant violated the FLSA by "shaving" employees' time to avoid paying overtime wages. (Dkt. 1, ¶¶ 2-3). Plaintiff alleges that Defendant did this through its managers, who would use a "manager override" feature to change time records on cash register "clock-in" systems. (Dkt. 1, ¶¶ 18-21). Plaintiff asserts that Defendant's hourly employees with the following job titles are similarly situated:

> **Customer Service:** Responsible for customer service, cash handling, merchandising activities, light maintenance and any additional tasks specific to each position.
>
> **Beauty Advisor:** Responsible for customer service and cosmetic merchandising activities.
>
> **Photo Lab:** Responsible for customer service, photo finishing, cash handling and general equipment maintenance.
>
> **Shift Supervisor:** Responsible for customer service, employee supervision, cash handling and merchandising activities.
>
> **Pharmacy Technician:** Our Service Associates are responsible for ringing out prescriptions, answering telephones, and pharmacist referrals. Our Certified Technicians are responsible for customer service and prescription order processing, as well as problem resolution and inventory management.

(Dkt. 11, p. 2; Dkt. 11-3; http://www.cvs.com/corpInfo/careers/stores_hourly.html).

Plaintiff filed the instant motion seeking conditional certification of a collective action, expedited discovery responses, and authorization for notice to potential collective action plaintiffs. (Dkt. 11). Specifically, Plaintiff requests certification of a collective class consisting of "all current and former hourly non-management employees of Defendant during the three (3) years prior to the filing of this action." (Dkt. 11, p. 10). Plaintiff also requests approval of the proposed notice to the class (Dkt. 11-9) and consent form (Dkt. 11-10) and authorization for Plaintiff's counsel to mail notices to potential opt-in plaintiffs. (Dkt. 11, pp. 10-11). Plaintiff also requests expedited discovery, including an interrogatory to Defendant seeking the names, addresses, telephone numbers, dates of employment, and job titles of all potential opt-in plaintiffs (Dkt. 11-11). (Dkt. 11, p. 13).

In opposition, Defendant argues that Plaintiff has failed to satisfy the requirements for conditional certification of a FLSA class. (Dkt. 23, pp. 2-3). Specifically, Defendant argues that Plaintiff has failed to provide sufficient evidence that potential opt-in plaintiffs are interested in joining the action, and even if he has, the potential opt-in plaintiffs are not similarly situated.[2] (Dkt. 23, p. 2). Defendant further argues that the proposed opt-in class is too large and would consist of over 250,000 current and former CVS employees, regardless of their job title, store location, full-time or part-time status, or the identity of their supervisor/manager. (Dkt. 23, pp. 2-3). Defendant maintains that litigating with such a large class would violate its due process rights and would not meet the required goal of judicial economy and efficiency. (Dkt. 23, p. 3).

## Discussion

### I.      Applicable Law

Pursuant to 29 U.S.C. § 216(b), certification of collective actions in FLSA cases is based on a theory of judicial economy, by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."[3]

---

[2] Defendant argues that the evidence offered by Plaintiff is insufficient because it is based on irrelevant and anonymous newspaper articles, unauthenticated Department of Labor reports, conclusory allegations and inadmissible hearsay. (Dkt. 23, pp. 10-11).

[3] The FLSA provides in pertinent part:

Any employer who violates the provisions of section 206 [the minimum wage statute] or section 207 [the overtime pay statute] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Courts utilize a two-tiered approach in making collective action certification determinations under the FLSA:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (*quoting Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)); *see also Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

At the notice stage, the court must initially determine whether: 1) there are other employees "who desire to opt in" to the action; and 2) the employees who desire to opt in are "similarly situated." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). This determination is made using a fairly lenient standard. *Cameron-Grant*, 347 F.3d at 1243 n.2. However, the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (*internal quotations and citation omitted*). Ultimately, the district court must satisfy itself that there are other employees who are similarly situated and who desire to opt in. *Dybach*, 942 F.2d at 1567-68.

**I.      Other Employees Who Desire to Opt In**

"[P]laintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[ ] in the broad class that they proposed." *Haynes v. Singer Co., Inc.,* 696 F.2d 884, 887 (11th Cir. 1983). Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees. *Davis v. Charoen Pokphand (USA), Inc.,* 303 F. Supp. 2d. 1272, 1277 (M.D. Ala. 2004). A plaintiff's or counsel's belief in the existence of other employees who desire to opt in and "unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify" certification of a collective action and notice to a potential class. *Mackenzie v. Kindred Hosps. East, L.L.C.,* 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (*citing Haynes,* 696 F.2d at 887); *Horne v. United Servs. Auto. Ass'n,* 279 F. Supp. 2d 1231, 1236-37 (M.D. Ala. 2003). Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. *Mackenzie,* 276 F. Supp. 2d at 1220 (*citing Dybach,* 942 F.2d at 1567-68) (*emphasis added*). Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court.[4] *Id.*

In support of his argument that there are other employees who desire to opt in to this action, Plaintiff submits his own declaration in which he avers, "I am aware that other employees had changes made to their time sheets by CVS management using the 'manager override' feature to

---

[4] *See also Tyler v. Payless Shoe Source, Inc.,* 2005 WL 3133763, *3 (M.D. Ala. Nov. 23, 2005) (three to five consents to join were sufficient to establish that others desired to opt in); *Pendlebury v. Starbucks Coffee Co.,* 2005 WL 84500, *3 (S.D. Fla. Jan. 3, 2005) (plaintiff's allegations and four affidavits by employees indicating that others desired to opt in were sufficient); *Bell v. Mynt Entm't, LLC,* 223 F.R.D. 680, 683 (S.D. Fla. 2004) (affidavits from seven plaintiffs indicating others desired to opt in and detailing allegations of wage violations were sufficient); *Hill v. CVS Rx Servs, Inc.,* Case No. CV00-HGD-3355-S, at 4-5 (N.D. Ala. July 27, 2001) (plaintiff's affidavit and six consents to join were sufficient); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 362-63 (M.D. Ala. 1999) (fifteen affidavits by employees with specific allegations of wage violations were sufficient).

remove time from their payrolls records.  This resulted in them not being paid properly for all hours worked." (Dkt. 11-5, Dec. of Christopher M. Rodgers, at ¶ 9).  Plaintiff further avers, "I believe that if other current and former employees of CVS became aware of this lawsuit they would choose to join in." (Rodgers' Dec. at ¶ 22).  Plaintiff's declaration does not identify any individuals who desire to join this lawsuit.

In addition, Plaintiff offers the declarations of two former CVS employees, both of whom have filed notices of consent to join this lawsuit. (Dkt. 11-4, Dec. of Sherry Sherer; Dkt. 17-3, Dec. of Francisco Lopez).  Sherry Sherer, who worked at a CVS in Florence, South Carolina, and Francisco Lopez, who worked at a CVS in Miami Beach, Florida, describe Defendant's failure to pay overtime compensation and "shaving time" by management.  (Sherer's Dec. at ¶¶ 2, 5, 7-8, 11, 13, 16, 17; Lopez's Dec. at ¶¶ 2, 5-8, 10-11).  Sherer and Lopez allege that their co-workers had similar experiences, and as a result,  they "believe" that if other employees were aware of this lawsuit, they would choose to participate.  (Sherer's Dec. at ¶ 18; Lopez's Dec. at ¶ 12).  In their declarations, neither Sherer nor Lopez identify other employees who desire to join this lawsuit.

As further evidence that there are other employees who may desire to join the action, Plaintiff offers documents received from the Department of Labor which purport to show other employees have complained of alleged wage violations by Defendant. (Dkts. 11-6, 28, and 35).  However, the complaints referenced in these documents relate to different types of wage violations and were made by employees with different job titles and descriptions who worked at CVS locations across the county.   Although  the  documents  indicate  complaints  of  wage  violations  were  made  and investigated,  none  of  the  documents  establish  that  any  of  those  individuals  desire  to  join  this

lawsuit.[5]  Similarly, Plaintiff argues that Defendant's involvement in a prior lawsuit alleging FLSA violations based on paycheck deductions (not time shaving) serves as evidence of wage violations in this case and/or other individuals who would desire to join this lawsuit. (Dkt. 11-8).  Again, even assuming the other lawsuit involved similar claims of wage violations, similarly situated employees, and allegations not barred by the statute of limitations, its mere existence does not provide evidence that other individuals desire to join this lawsuit.

Plaintiff also offers two newspaper articles in support of his motion. (Dkts. 11-2 and 11-7). The *New York Times* article merely addresses "shaving time" by other national retailers and is not relevant to a determination of whether other individuals desire to join this lawsuit. (Dkt. 11-2).  The *Washington City Paper* article criticizes the CVS drugstore chain for everything from mistakes made by the pharmacy to dirty and cluttered stores.  (Dkt. 11-7).  In the twelve page article, there is one reference to CVS's wage practices, wherein an anonymous former employee of a "northeast" CVS store states that management "expected us to work unpaid overtime."  (Dkt. 11-7, p. 5).  The anonymous source does not allege his or her time was shaved.  (Dkt. 11-7).  This vague reference to a wage violation made by an anonymous former employee who worked at an undisclosed location is insufficient to support Plaintiff's motion.

In contrast, Defendant has submitted thirty one affidavits by current employees who worked with Plaintiff, Sherer and Lopez and who indicate that they do not desire to participate in this

_____

[5] Of the six investigations referenced in the Department of Labor documents, only two resulted in findings of violations of a different type than those alleged in this case. (Dkts. 11-6, 28, and 35).  After an investigation of the one complaint involving time shaving that took place from February 19, 2001 through February 19, 2003, the Department of Labor found no violation based on a lack of documentation.  (Dkt. 11-6).  Plaintiff argues that the individuals who filed this complaint would want to join this case "because a discovery request for their original time records would be able to support their assertions."  (Dkt. 11, p. 8).  However, even assuming these employees could be identified, were similarly situated, and desired to opt in, the wage violations they complained of occurred sometime prior to February, 2001 when the investigation began, which places their claims outside of the statute of limitations.

lawsuit.[6] (Dkt. 23, Exs. 3(a)-(n), 4(a)-(I), and 5(a)-(h)). These affiants deny that their work time has been "shaved" or that they have been denied overtime compensation.[7] (Dkt. 23, Exs. 3, 4 and 5 inclusive).

Upon consideration, Plaintiff has failed to provide sufficient evidence that there are other employees who desire to opt in to this action, other than the two who have filed consents. In the year since this lawsuit was filed, Plaintiff has only been able to identify those two individuals. The significance of this number is drastically minimized when compared to the 250,000 hourly employees who worked for Defendant in the last three years at 5,375 stores in 36 states. (Dkt. 23-2, Aff. of Mark Griffin, at ¶¶ 6-7). Moreover, Plaintiff, Sherer and Lopez's averments that they "believe" other employees would opt in are speculative, vague and conclusory. They have failed to identify any other employees who desire to join or who have expressed an interest in joining this action. Plaintiff's unsupported beliefs and expectations that others *may* desire to opt in are insufficient to justify certification of a collective action and notice to a potential class.[8] *See*

---

[6] Specifically, Defendant has provided affidavits from fourteen employees from Plaintiff's store, nine employees from Sherer's store, and eight employees from Lopez's store. (Dkt. 23, Exs. 3, 4 and 5 inclusive).

[7] For purposes of the instant motion, Defendant's affidavits are relevant only to a determination of whether Plaintiff has demonstrated a "reasonable basis" for crediting his assertions that aggrieved employees exist in the class he proposes. *Haynes*, 696 F.2d at 887.

[8] *See also Wombles v. Title Max of Ala., Inc.*, 2005 WL 3312670, *3 (M.D. Ala. Dec. 7, 2005) (two consents to join and five nearly identical affidavits by plaintiffs indicating that they "believe" others desire to join the lawsuit were insufficient to establish that others desired to opt in); *Davis*, 303 F. Supp. 2d at 1277 (plaintiff's testimony that twelve other employees "were unhappy with" Defendant's policies and would join the suit, without supporting affidavits or consents to join, were insufficient); *Slaughter v. CVS Rx Servs., Inc.*, Case No. CV03-CO-01403-S, at 12-13 (N.D. Ala. Nov. 1, 2004) (thirteen plaintiffs and one affidavit by an employee who desired to join was insufficient); *Horne*, 279 F. Supp. 2d at 1236 (plaintiff's own affidavit indicating he "believed" others desire to opt in was insufficient); *Mackenzie*, 276 F. Supp. 2d at 1220 (plaintiff's failure to provide evidence of other individuals who desired to join the lawsuit and plaintiff's admission that he did not know of any individuals who desired to opt in was insufficient); *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (three identical affidavits by employees with different job titles and job responsibilities who worked in different geographic locations were insufficient).

*Mackenzie,* 276 F. Supp. 2d at 1220 (certification and notice are not appropriate to determine *whether* others desire to opt in).

Plaintiff has not demonstrated a reasonable basis for crediting his assertions that other aggrieved employees exist in the class he proposes. *See Haynes*, 696 F.2d at 887. The three declarations offered by Plaintiff do not provide detailed allegations that engage Defendants' thirty one affidavits to the contrary. *See Grayson*, 79 F.3d at 1097; *Wombles*, 2005 WL 3312670, at *3 (plaintiffs' affidavits and two consents to join were not sufficient to engage defendant's forty six affidavits to the contrary). Accordingly, Plaintiff has failed to demonstrate to the Court's satisfaction that there are other employees who desire to opt in to this lawsuit.

## II.    Similarly Situated Employees

Even if Plaintiff's motion was sufficient to demonstrate the existence of individuals who desire to opt in, he has not shown that he is similarly situated to Sherer, Lopez, or any other potential class plaintiffs. In determining whether employees are similarly situated, the court must consider whether the employees are similar with respect to their job requirements and pay provisions and the commonality of their claims. *Dybach*, 942 F.2d at 1567-68; *Horne*, 279 F. Supp. 2d at 1234. Plaintiffs must only demonstrate that their positions are similar, not identical, to the positions of the potential class plaintiffs. *Grayson*, 79 F.3d at 1096. Although the similarly situated standard is not a stringent one, a showing of similarity requires more than unsupported and generalized allegations. *Hipp*, 252 F.3d at 1219 (*citing Grayson*, 79 F.3d at 1097); *Haynes*, 696 F.2d at 887.

In his motion, Plaintiff argues that all of Defendant's hourly, non-management employees are similarly situated with respect to their job requirements and pay provisions, including customer service, beauty advisor, photo lab, shift supervisor, and pharmacy technician employees. (Dkt. 11, pp. 2, 9-10). Plaintiff maintains that these employees utilize the same computer system to clock in

and out (the same computers that allegedly allow managers to shave time) and share the same job functions, including core duties to provide customer service and cash handling.  (Dkt. 11, pp. 2, 9).

Despite these allegations, Plaintiff has not shown he is similarly situated with Sherer, Lopez or other potential class plaintiffs with regard to their job requirements.[9]  In their declarations, Plaintiff, Sherer and Lopez do not describe their job requirements and/or job descriptions to allow for an evaluation of similarities.  Plaintiff's reliance on the Defendant's descriptions of the positions on the company website, without more, is not sufficient to allow for a comparison of job requirements.[10]  Moreover, Lopez's job title and job requirements are not provided in the record.

Although Plaintiff, Sherer and Lopez clocked in and out on the company computer, the fact that their respective stores are located in three different cities (and two states) and are run by different managers precludes a finding of similarity on this basis.[11]  Further, although Plaintiff alleges that he and Sherer share core duties, such as customer service and cash handling, he has not provided any evidence to support this allegation.  Because Plaintiff has not even provided Lopez's job title or job requirements, the Court cannot determine whether Plaintiff and Lopez share *any*

---

[9] Plaintiff, Sherer and Lopez were hourly employees.  (Griffin's Aff. at ¶ 9; Sherer's Dec. at ¶ 3; Lopez's Dec. at ¶ 3).  For purposes of the instant motion, it is undisputed that their pay provisions were similar.

[10] Plaintiff was a night shift supervisor, and Sherer was a pharmacy technician.  (Griffin's Aff. at ¶¶ 9-11).  Although all of the five positions described on the website involve customer service, three of them involve cash handling (customer service, photo lab, and shift supervisor) and two do not (beauty advisor and pharmacy technician).  (Dkt. 11, p. 2; Dkt. 11-3).  Accordingly, based on these job descriptions, Plaintiff's argument that he shares core duties with Sherer is without merit.

[11] Defendant argues that Plaintiff has not shown a common policy or plan resulting in wage violations.  (Dkt. 23, pp. 13-16).  Although this type of evidence is not required, evidence of "a unified policy, plan, or scheme" may be sufficient to establish similarity of the putative class.  *Grayson*, 79 F.3d at 1095.  Plaintiff suggests that by requiring employees to clock in and out on company computers, Defendant allows it managers to override the time records and shave time.  Despite Plaintiff's allegations that time shaving has affected three employees at three different stores, the allegations do not overcome Defendant's affidavits to the contrary.  Again, Defendant has offered affidavits from multiple employees at each of those stores who deny that their time was shaved.

similar duties, core or otherwise. Even assuming that Plaintiff shares core duties with Sherer and Lopez, he has not established that involvement in customer service and cash handling similarly situates them to Defendant's 250,000 hourly employees.

Although Plaintiff is not required to demonstrate that his position is identical to the putative class plaintiffs, he must demonstrate similarity based on more that generalized allegations. *See Hipp*, 252 F.3d at 1219; *Grayson*, 79 F.3d at 1096-97. Plaintiff has failed to do so.[12] Therefore, Plaintiff has failed to demonstrate to the Court's satisfaction that there are other similarly situated employees who desire to opt in to this action.

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Conditionally Certify Collective Action, to Facilitate Notice (Dkt. 11) is **DENIED**.

**DONE AND ORDERED** in chambers this 22nd day of March, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

---

[12] Defendant also argues that Plaintiff has failed to show commonality between his claims and the claims of the putative class. In support, Defendant argues that Plaintiff, Sherer and Lopez assert divergent theories about how their rights to overtime were violated. Sherer asserts that her manager improperly designated time worked as sick time, deducted time for lunch breaks not taken, and reduced scheduled hours. (Sherer's Dec. at ¶¶ 11, 13, 16, 17). Lopez asserts he was required to "work off the clock" and was not paid for the first two weeks of his employment. (Lopez's Dec. at ¶¶ 5, 7, 11). Despite the different types of wage violations alleged, Plaintiff, Sherer and Lopez each assert that their managers shaved their time. (Plaintiff's Dec. at ¶ 5; Sherer's Dec. at ¶ 5; Lopez's Dec. at ¶ 5). The allegations of time shaving establish a commonality between Plaintiff, Sherer and Lopez's claims. Nevertheless, Plaintiff has not provided sufficient evidence of a commonality between these claims and the claims of the putative class.